# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| IRINA FARQUHAR,<br>　　　　　Appellant, | DOCKET NUMBER<br>DC-1221-17-0296-W-1 |
| v. | |
| DEPARTMENT OF THE ARMY,<br>　　　　　Agency. | DATE: July 24, 2023 |

# THIS ORDER IS NONPRECEDENTIAL[1]

Irina Farquhar, Burke, Virginia, pro se.

Andrea Blake Saglimbene, Esquire, and Jonathan A. Heller, Esquire, Fort Belvoir, Virginia, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## REMAND ORDER

¶1　　The appellant has filed a petition for review of the initial decision, which denied her request for corrective action in her individual right of action (IRA) appeal. For the reasons discussed below, we GRANT the appellant's petition for

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

review and REMAND the case to the Washington Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2 The appellant was hired as an Operations Research Analyst with the agency in Fort Belvoir, Virginia. Initial Appeal File (IAF), Tab 1 at 8. On August 23, 2016, the appellant's supervisor (the proposing official) proposed removing the appellant based on her failure to adequately contribute to the agency's mission. *Id.* at 9-23. Six days after the proposal was issued, the appellant filed a complaint with the Office of Special Counsel (OSC) alleging that the agency's proposal to remove her and to take a number of other personnel actions against her was in retaliation for disclosures she made in 2015 and 2016. IAF, Tab 7 at 4-19. After receiving the appellant's oral and written replies to the proposal, IAF, Tab 6 at 21-35, on December 14, 2016, the appellant's second-line supervisor (the deciding official) issued a decision removing the appellant from Federal service, effective January 7, 2017, IAF, Tab 1 at 24-26. On February 2, 2017, the appellant filed the instant appeal challenging her removal. IAF, Tab 1. Attached to her appeal, the appellant provided a January 26, 2017 preliminary close-out letter from OSC that identified her January 7, 2017 removal as one of the personnel actions that she contested with OSC. *Id.* at 27-31. On March 2, 2017, the appellant submitted OSC's final close-out letter dated February 16, 2017. IAF, Tab 8 at 4-5.

¶3 After initially determining that the appeal was limited to the appellant's challenge to her performance-based removal, the administrative judge issued an order reconsidering his decision and concluded that, based on the additional documents the appellant submitted regarding her communications with OSC, the appeal would be considered as an IRA appeal, as the appellant requested. IAF, Tab 28 at 2-6, Tab 31 at 1-3. In the order, the administrative judge also identified the following exhaustive list of disclosures that he would be considering in

adjudicating the IRA appeal: (1) memoranda and presentations the appellant provided to her first-line supervisor and former second-line supervisor from March through May 2015, disclosing purported agency program failures; (2) information communicated to the agency's equal employment opportunity (EEO) office in September 2015 concerning her attempts to notify her supervisors of purported deficiencies with agency programs; (3) information provided to the agency's Inspector General (IG) office in August 2015 and August 2016 concerning alleged deficiencies with agency programs; and (4) the appellant's communications with the office of Senator John McCain in September 2016 regarding her allegations of whistleblower reprisal. IAF, Tab 31 at 2. The administrative judge also identified the following personnel actions the appellant alleged were taken against her in reprisal for her purported disclosures: (1) her annual contribution appraisal was downgraded on January 11, 2016; (2) she was placed on a Contribution Improvement Plan (CIP) on February 1, 2016; (3) she received a proposed removal on August 23, 2016; (4) she received a removal decision letter on December 14, 2016, and was removed from Federal service, effective January 7, 2017; and (5) she was subjected to a hostile work environment by agency officials. *Id.* at 2-3.

¶4 After holding the appellant's requested hearing, the administrative judge issued an initial decision denying her request for corrective action. IAF, Tab 35, Initial Decision (ID) at 1, 17. The administrative judge found that the appellant's first- and second-line supervisors did not know about her purported disclosures to the agency's IG office or the EEO office, or about her communications with the office of Senator McCain. ID at 12-14. Consequently, the administrative judge concluded that those purported disclosures could not have contributed to either official's decision to take any of the contested personnel actions. ID at 12-14.

¶5 Regarding one of the purported disclosures, a memorandum on Economic Analysis (EA) Services, which the appellant prepared in February 2015 and claimed to have disclosed to her first-line supervisor at various times from March

through May 2015, the administrative judge concluded that, because the memorandum was not provided with her Board appeal, he could only make his findings based on the parties' second-hand descriptions of the contents of the memorandum as well as the appellant's characterization of the contents of the memorandum to OSC. ID at 14. Based on the information provided, the administrative judge concluded that the memoranda and other materials the appellant provided did not contain protected disclosures but instead reflected the appellant's unsolicited suggestions for ways to improve the agency's inventory organization policies and economic assumptions used in cost-analysis models, and similar policy suggestions for ways to improve the economic analysis services provided by the agency. ID at 14-17. The administrative judge concluded that the appellant's suggested improvements constituted policy disagreements and did not evidence any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, such that they would rise to the level of protected disclosures under 5 U.S.C. § 2302(b)(8). ID at 14-17. Consequently, the administrative judge denied the appellant's request for corrective action. ID at 17.

¶6 The appellant has filed a petition for review of the initial decision. Petition for Review (PFR) File, Tab 2. The agency has filed a response in opposition to the petition for review, and the appellant has filed a reply. PFR File, Tabs 5-6.

## DISCUSSION OF ARGUMENTS ON REVIEW

The appellant's petition for review was timely filed.

¶7 The initial decision was issued on September 7, 2017, and informed the appellant that a petition for review must be filed by October 12, 2017. ID at 1, 17. The appellant filed two submissions with the Washington Regional Office on October 11 and 12, 2017, entitled "Reopening an Appeal Dismissed Without Prejudice," and documents entitled "Petition for Review" and "Supplement to

PFR" with the Office of the Clerk of the Board on October 12, 2017, which the Clerk's Office rejected for failing to comply with the Board's requirements for filing a petition for review. PFR File, Tab 1 at 1. The letter from the Clerk's Office instructed the appellant to file a single, perfected petition for review on or before October 27, 2017. *Id.* at 2. The appellant submitted a perfected petition for review, which was received by the Clerk's Office on October 30, 2017. PFR File, Tab 2. With her petition, the appellant submitted a copy of a Federal Express receipt reflecting payment for overnight priority delivery with a time-stamp showing October 28, 2017, at 12:03 a.m. *Id.* at 1-2. The petition also included a signed statement from a Federal Express employee averring that, although the appellant's petition-for-review package was tendered to the Federal Express office at 11:45 p.m. on October 27, 2017, the package was not processed and time-stamped until after 12:00 a.m. on October 28th, due to a system error. *Id.* at 1. In a subsequent motion to accept her petition as timely filed, the appellant provided an affidavit explaining that she delivered her petition for review to a Federal Express office in Fairfax, Virginia, at 11:45 p.m. on the deadline date. PFR File, Tab 4 at 1-2. With her motion, the appellant provided additional detail, including an email from the Federal Express Senior Center Manager explaining that the label for the appellant's petition-for-review package was printed at 11:50 p.m. on October 27th, but the label had to be reprinted, resulting in a package time-stamp dated October 28th. *Id.* at 7.

¶8        The Board's regulations state that the date of filing by commercial overnight delivery "is the date the document was delivered to the commercial delivery service." 5 C.F.R. § 1201.4(*l*). Here, the record evidence shows that, despite the time-stamp on the package, the package containing the appellant's petition for review was timely tendered to the overnight delivery service.

Accordingly, we find the petition for review timely filed.[2] *See McDavid v. Department of Labor*, 64 M.S.P.R. 304, 306 (1994) (extending to commercial delivery services the rule that, although the postmark date is ordinarily the date of filing, a party may establish otherwise by presenting evidence, in the form of an affidavit or a sworn statement, that, despite the postmark date appearing to indicate that the submission was filed beyond the deadline, the pleading was actually placed in the delivery stream by the filing deadline, and thus was timely filed).

---

[2] The appellant also has filed an untimely reply to the agency's response to the petition for review and requests that the Board find that there is good cause for the filing delay. PFR File, Tab 6. The agency filed its response to the appellant's petition for review on November 20, 2017, and the appellant filed her reply to the agency's response on January 16, 2018. PFR File, Tabs 5-6. As the Board noted in the petition for review acknowledgment order, a reply to a response to a petition for review must be filed within 10 days after the date of service of the response to the petition for review. PFR File, Tab 3 at 1; *see* 5 C.F.R. § 1201.114(e). Here, the appellant filed her reply to the agency's response on January 16, 2018—over a month and a half after the November 30, 2017 filing deadline. PFR File, Tab 5.

The appellant requests that the Board accept her untimely filing and has submitted three letters from two different doctors, dated December 28, 2017, November 28, 2017, and November 9, 2017, respectively, describing her degenerative hip and eye conditions and other medical complications related to those conditions. PFR File, Tab 6 at 16-19. In the last of those letters, dated December 28, 2017, the appellant's treating physician notes that the appellant's condition and the severe pain associated with it would prevent her from sitting or standing in front of a computer. The letter specifically states that the appellant would need to be excused from work-related activities, including those pertaining to her Board appeal, and notes that he would follow up to reevaluate her condition 45 days later (on or about February 11, 2018). *Id.* at 17. As such, the appellant has provided sufficient cause, supported by corroborating medical evidence, explaining how her illness prevented her from timely filing her reply. *See Stribling v. Department of Education*, 107 M.S.P.R. 166, ¶ 8 (2007); *Lacy v. Department of the Navy*, 78 M.S.P.R. 434, 437-38 (1998). Accordingly, we have considered the reply. In the reply, the appellant merely restates her arguments concerning the invalidity of the CIP and the removal action, and her claim that the administrative judge erred in determining that she did not make any protected disclosures. PFR File, Tab 6 at 1-15.

<u>The appellant's decision to seek corrective action challenging her removal before OSC was not a binding election, and the appeal must be remanded and redocketed as an appeal of her performance-based removal.</u>

¶9    On review, the appellant argues that the administrative judge failed to address "all aspects" of her appeal and focused only on her IRA appeal. PFR File, Tab 2 at 17. Among other things, the appellant contends that there were irregularities in the process the agency used to assess her contributions and that her peers and superiors thought highly of her work.[3] *Id.* at 5-10, 17-18.

¶10    As previously noted, the administrative judge originally determined that the Board only had jurisdiction over the appellant's appeal as a challenge to her performance-based removal before later acquiescing to the appellant's request that her appeal be adjudicated as an IRA appeal. ID at 2-3; IAF, Tab 28 at 2-6, Tab 31 at 1-3. Because the administrative judge ultimately concluded that some of the appellant's disclosures could not have been a contributing factor to any of the contested personnel actions and that her other disclosures were not protected under the rubric of the whistleblower-protection statutes, he did not discuss the details of the challenged personnel actions at length in the initial decision. ID at 17.

¶11    Under 5 U.S.C. § 7121(g), an appellant who has been subjected to an action appealable to the Board, and who alleges that she has been affected by a prohibited personnel practice other than a claim of discrimination under 5 U.S.C.

---

[3] The appellant also argues that the electronic record is mislabeled and that the recording of the first hearing day, June 26, 2017, is missing from the electronic file. PFR File, Tab 2 at 12-14. The appellant's assertion is correct. The electronic record was in fact mislabeled, and the June 26, 2017 hearing recording was missing from the electronic file. On June 11, 2018, the Clerk's Office issued a notice acknowledging that Tab 32, the tab identified as containing the hearing testimony from June 26, 2017, was mislabeled and instead contained the hearing recording from testimony taken on June 27, 2017. PFR File, Tab 7 at 1. The notice also stated that the corrected audio file for the testimony from June 26th had been reuploaded to Tab 32 and provided the appellant with 35 days to submit a 10-page filing supplementing her petition for review. *Id.* The appellant did not reply to the Board's notice and did not submit a supplement to her petition for review or any additional filings.

§ 2302(b)(1), may elect one, and only one, of the following remedies:  (1) an appeal to the Board under 5 U.S.C. § 7701; (2) a grievance filed under the provisions of a negotiated grievance procedure; or (3) a complaint following the procedures for seeking corrective action from OSC under 5 U.S.C. chapter 12, subchapters II and III.  *Corthell v. Department of Homeland Security*, 123 M.S.P.R. 417, ¶ 15 (2016); *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 17 (2015), *overruled in part by Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 23-25; 5 C.F.R. § 1209.2(d)(1).  Whichever remedy is sought first by an aggrieved employee is deemed an election of that procedure and precludes pursuing the matter in either of the other two fora.  *Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶ 14 (2013).  However, an employee's election of remedies under section 7121(g) will not be binding if it is not knowing and informed.  *Id., ¶* 16.  When an agency takes an action without informing the appellant of her procedural options under section 7121(g) and the preclusive effect of electing one of those options, any subsequent election by the appellant is not binding.  *Id.*, ¶ 17.

¶12      As previously noted, the record reflects that the appellant filed a whistleblower reprisal complaint with OSC after she received her removal proposal letter but before she received the removal decision letter and before she filed her initial Board appeal.  IAF, Tab 1 at 9-26, Tab 7 at 4.  The record also reflects that after receiving the removal decision letter, the appellant supplemented her OSC filings to include her removal as one of the contested actions, and OSC's preliminary and final determination letters reflect that it considered the removal decision in its investigation.  IAF, Tab 1 at 27-31, Tab 8 at 5-6.  Additionally, the appellant supplemented the record for her Board appeal with a copy of OSC's final decision letter and further supplemented the record with copies of email correspondences with OSC demonstrating that she had amended her OSC complaint to include a challenge to the removal decision after

the administrative judge initially determined that she had failed to prove exhaustion of her removal challenge with OSC.  IAF, Tabs 8, 28, 29-30.

¶13        Nevertheless, there is nothing in the record demonstrating that either the agency or the administrative judge apprised the appellant of the preclusive effect of her decision to challenge her removal with OSC.  The notice of appeal rights in the agency's removal decision letter did not identify OSC as a possible avenue for relief and did not identify the preclusive effect of the appellant's decision to seek corrective action regarding her removal with OSC under subchapters II and III of chapter 12 of Title 5, followed by an IRA appeal with the Board.  IAF, Tab 1 at 24-26; *see* 5 C.F.R. § 1201.21(d)(4).[4]        Additionally, although the administrative judge identified the appellant's removal as an "otherwise appealable" action, noted that the appellant's challenge to her removal would have been timely filed as a performance-based action appeal, and identified the differences in the burden of proof requirements between IRA appeals and performance-based actions in his initial ruling on IRA jurisdiction, he did not clearly identify that the appellant's decision to challenge her removal as a part of her IRA appeal would preclude a later performance-based action appeal.  IAF, Tab 28 at 5-6.  Accordingly, we find that the appellant's decisions to file an OSC complaint of her removal and a subsequent IRA appeal with the Board were not "knowing and informed" because she was not informed by the agency of all of her procedural options under section 7121(g) or of the preclusive effect of filing the OSC complaint, and there is no evidence in the record indicating that she was

---

[4] During the pendency of this appeal, Congress enacted the National Defense Authorization Act of 2018 (2018 NDAA).  Pub. L. No. 115-91, 131 Stat. 1283 (Dec. 12, 2017).  The 2018 NDAA codified, with respect to an action taken under 5 U.S.C. §§ 7503(b)(1), 7513(b)(1), or 7543(b)(1), an agency's obligation to notify an employee of her right to appeal an action brought under one of the applicable sections, the forums in which she may file her appeal, and any limitations on her rights that would apply because of her forum selection.  Section 1097(b)(2), 131 Stat. at 1617 (5 U.S.C. § 7503 Note).  We need not consider the retroactivity of this provision because our finding would be the same regardless—the agency did not provide the appellant the requisite notice.

informed of such by some other means.[5]  IAF, Tab 1 at 24-26; *see Corthell,* 123 M.S.P.R. 417, ¶ 17; *Edwards v. Department of the Air Force*, 120 M.S.P.R. 307, ¶ 13 (2013); 5 C.F.R. § 1209.2(d)(1).

¶14    Despite her request that her appeal be docketed as an IRA appeal below, on review, the appellant appears to challenge the adjudication of her appeal as an IRA appeal instead of as a challenge to her performance-based removal.  PFR File, Tab 2 at 17.  Because we conclude that the appellant's decisions to file a request for corrective action with OSC and a subsequent Board IRA appeal did not constitute a knowing and informed election, we must remand the appeal to the regional office for redocketing as an appeal of her performance-based removal.[6]

---

[5] In the prehearing conference summary determining that the appellant's appeal would be adjudicated as an IRA appeal based on the additional evidence she supplied, the administrative judge identified the appellant's purported disclosures and contested personnel actions as the issues in dispute and stated that "additional issues are precluded in this appeal."  IAF, Tab 31 at 1-2 (emphasis in original).  However, this statement did not clearly identify that the appellant's decision to pursue her appeal as an IRA appeal constituted a binding election, did not identify the alternative avenues for challenging her removal, and did not state that her decision to proceed with her IRA appeal would preclude a later challenge of the agency's removal decision as a stand-alone performance-based action appeal. *Id.*  Consequently, this statement did not provide sufficient notice to meet the election notice requirements under 5 U.S.C. § 7121(g). *See* 5 C.F.R. § 1209.2(d).

[6] Regarding the appellant's argument that new and material evidence became available after the record closed below that warrants a different outcome in her case, the purportedly newly discovered evidence appears to relate to the fact that in August 2017, she was diagnosed with persistent pain, a degenerative hip condition, and a tear in the retina of her right eye, and she attaches several letters from her physicians dated in July and August 2017 documenting these findings.  PFR File, Tab 2 at 10-11, 22-28.  Although this evidence is "new" in the sense that it was unavailable when the record closed below, the appellant has not explained how it is material to the outcome of her appeal. *See Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980) (noting that the Board will not grant a petition for review based on new evidence absent a showing that it is of sufficient weight to warrant an outcome different from that of the initial decision).  Nevertheless, because we are remanding the appeal for redocketing as an appeal of her performance-based removal, the appellant may proffer the medical evidence before the administrative judge on remand, and the administrative judge in that case may determine its relevance.  5 C.F.R. § 1201.41(b)(10).  Similarly, regarding the appellant's argument that the administrative judge incorrectly stated that a copy of her memorandum on EA Services dated February 15, 2015, was not included within her

> On remand, the administrative judge may incorporate into his new decision the prior findings concerning the appellant's purported whistleblowing activities to the extent he finds appropriate.

¶15    The administrative judge in this appeal held a full hearing on the merits of the appellant's IRA appeal and determined that of the six purported disclosures the appellant had exhausted with OSC, the agency officials involved in effecting the appellant's removal did not know about three of them (and therefore they could not have contributed to either official's decision to remove the appellant), and the remaining purported disclosures identified policy disagreements and did not disclose any protected matter.  ID at 12-17.  Although the administrative judge must make findings concerning any new affirmative defenses the appellant may raise on remand, the administrative judge may, to the extent he finds appropriate, incorporate his previous findings concerning the appellant's existing whistleblowing disclosures into any new initial decision.[7]

---

appeal, the appellant's assertion is correct.  PFR File, Tab 2 at 16.  Although the appellant does not identify where the memorandum can be found in the record, it appears that a copy of it was included within the appellant's approved hearing exhibits. IAF, Tab 27 at 106-10.  On remand, the parties will have the opportunity to address the contents of the memorandum in the context of the appellant's performance-based removal appeal.

[7] During the pendency of the petition for review in this case, the U.S. Court of Appeals for the Federal Circuit held in *Santos v. National Aeronautics and Space Administration*, 990 F.3d 1355, 1360-61 (Fed. Cir. 2021), that part of the agency's burden under 5 U.S.C. chapter 43 is to justify the institution of the performance improvement plan by proving by substantial evidence that the employee's performance was unacceptable prior to that time.  Following the issuance of *Santos*, the Board issued *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶¶ 15-16, which incorporated the changes made by *Santos* and found that *Santos* applies to all pending cases, regardless of when the events took place.  Although the appeal in *Santos* involved a performance-based adverse action under a traditional performance-based appraisal system, we find that the court's reasoning applies equally to the contribution-based adverse action taken under the Contribution-based Compensation Appraisal System at issue here.  IAF, Tab 6 at 18-20.  Accordingly, on remand, the administrative judge shall accept argument and evidence on whether the appellant's contribution level leading up to the contribution-based improvement plan was unacceptable, in addition to argument and evidence on the remaining issues.  *Lee*, 2022 MSPB 11, ¶ 17.  Any new argument or evidence affecting his prior findings as to the appellant's whistleblower

**ORDER**

¶16      For the reasons discussed above, we remand this case to the Washington Regional Office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:                    /s/ for
                                 _____
                                 Jennifer Everling
                                 Acting Clerk of the Board

Washington, D.C.

---

claim should be addressed in the remand initial decision.  *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and her legal reasoning, as well as the authorities on which that reasoning rests).